In The

# United States Court Of Appeals
## For The Fourth Circuit

**GARY WASHINGTON,**

*Plaintiff – Appellant,*

v.

**THOMAS PELLEGRINI; OSCAR REQUER; HELEN FAHLTEICH,**
**personal representative of Defendant Officer Richard Fahlteich's estate,**

*Defendants – Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE

———————

## BRIEF OF APPELLEES

———————

EBONY M. THOMPSON
  Baltimore City Solicitor

KARA K. LYNCH
JASMINE ENGLAND-CAESAR
  Office of Legal Affairs

MICHAEL P. REDMOND
  Director of Appellate Practice

CITY OF BALTIMORE LAW DEPARTMENT
100 N. Holliday Street
Baltimore, Maryland 21202
(410) 396-2496 – Telephone
(410) 396-2126 – Facsimile
kara.lynch@baltimorepolice.org

*Counsel for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-1566__      Caption: _Gary Washington v. Thomas Pellegrini_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_THOMAS PELLEGRINI; OSCAR REQUER; HELEN FAHLTEICH; JOHN TEWEY; FRED CERUTI_____
(name of party/amicus)

_____

 who is _____appellees_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?     ☐YES ☑NO

2.     Does party/amicus have any parent corporations?     ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?     ☐YES ☑NO
       If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _/s/ Michael Redmond_____    Date: _____5/26/2023_____

Counsel for: _Appellees_____

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ..................................................................................... iii

JURISDICTIONAL STATEMENT ........................................................................ 1

STATEMENT OF THE ISSUES ............................................................................ 1

STATEMENT OF THE CASE................................................................................. 2

    The investigation of Faheem Ali's murder leads to Gary Washington............ 2

    Grand jury proceedings and trial ..................................................................... 6

    Washington procures Robinson's recantation.................................................. 9

    Post-conviction proceedings............................................................................ 9

    Petition for writ of actual innocence ............................................................. 11

    Civil suit......................................................................................................... 12

    Washington secures Dorsey as a witness for his civil suit ............................ 12

    Lack of documents and memories ................................................................. 13

SUMMARY OF THE ARGUMENT ..................................................................... 16

ARGUMENT .......................................................................................................... 18

    I.     Standard of Review ............................................................................ 18

    II.    The Court properly granted summary judgment on the coercion/evidence fabrication claims (Count I) ................................... 19

          A.    Washington is estopped from arguing that Robinson's statement was fabricated or coerced ......................................... 19

               1.    Judge Peters's order did not "overrule" Judge Schwait's order ............................................................. 22

2.  Judge Schwait's order was not vacated by any Maryland court, or by operation of Maryland law ........26

3.  Vacating a Maryland criminal conviction does not invalidate all post-conviction civil proceedings............32

4.  The equities militate in favor of applying collateral estoppel ........................................................................35

B.  Count I fails to the extent it relies on the alleged fabrication of Dorsey's statement because Washington adduced no evidence that Dorsey's statement caused his loss of liberty........................................................................37

III.  Washington's *Brady* claim fails because there is no evidence Officer Defendants withheld any evidence, and because the allegedly withheld evidence is not material ........................................39

A.  Washington adduced no evidence that the Officer Defendants withheld *Brady* material ........................40

B.  Even if there were evidence the Officer Defendants withheld *Brady* material, the allegedly suppressed evidence is not material ............................................................44

IV.  The district court properly granted summary judgment on Washington's malicious prosecution and unlawful detention claims....................................................................................45

V.  The district court correctly granted summary judgment on Washington's intentional infliction of emotional distress claim ........46

VI.  The district court properly dismissed Washington's failure to intervene claim ...........................................................................47

CONCLUSION.....................................................................................48

CERTIFICATE OF COMPLIANCE.......................................................49

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Aguillard v. McGowam,*
207 F3d 226 (5th Cir. 2000) ..........................................................31

*Allen v. McCurry,*
449 U.S. 90 (1980)..........................................................................20

*Aventis Pasteur, Inc. v. Skevofilax,*
396 Md. 405 (2007) ........................................................................23

*Baltimore Cnty. v. Fraternal Ord. of Police, Baltimore Cnty. Lodge No. 4,*
449 Md. 713 (2016) ........................................................................22

*Barwick v. Celeotex Corp.,*
736 F.2d 946 (4th Cir. 1984)..........................................................44

*Bermudez v. City of New York,*
790 F.3d 368 (2d Cir. 2015)...........................................................30

*Brady v. Maryland,*
373 U.S. 150 (1972)..................................................................*passim*

*Bryan v. State Farm Mut. Auto Ins. Co.,*
205 Md. App. 587 ...........................................................................35

*Burgess v. Goldstein,*
997 F.3d 541 (4th Cir. 2021)..........................................19, 37, 40

*Caldor, Inc. v. Bowden,*
330 Md. 632 (1993) ........................................................................46

*Carson v. Giant Food, Inc.,*
187 F. Supp. 2d 462 (D. Md. 2002)......................................... 46-47

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)........................................................................18

*Chandler v. Louisville Jefferson Cnty. Metro Gov't,*
    No. 3:10-CV-470, 2011 WL 781183 (W.D. Ky. Mar. 1, 2011) ..............33, 34

*Colandrea v. Wilde Lake Cmty. Ass'n,*
    361 Md. 371 (2000) ............................................................... 35-36

*Collins v. Pond Creek Mining Co.,*
    468 F.3d 213 (4th Cir. 2006)........................................................20

*Cosby v. Dep't of Human Resources,*
    425 Md. 629 (2012) ..................................................................21

*Cybernet, LLC v. David,*
    954 F.3d 162 (4th Cir. 2020) .......................................................18

*Dash v. Mayweather,*
    731 F.3d 303 (4th Cir. 2013) .......................................................18

*District of Columbia v. Wesby,*
    583 U.S. 48 (2018).....................................................................46

*Dodrill v. Ludt,*
    764 F.2d 442 (6th Cir. 1985)........................................................31

*Donald v. Outlaw,*
    2023 WL 2346270 (N.D. Ind. Mar. 3, 2023)................................34

*Douglas v. State,*
    423 Md. 156 (2011) ..............................................................23, 28

*Evans v. Chalmers,*
    703 F.3d 636 (4th Cir. 2012)...................................................37, 45

*Ford Motor Co. v. McDavid,*
    259 F.2d 261 (4th Cir. 1958) .......................................................18

*Forrest v. Balt. Police Dep't,*
    No. 1:22-CV-03220-JMC, 2023 WL 3847429 (D. Md. June 6, 2023) ..........9

*Gary B. Washington v. State of Maryland,*
    No. 3078, Sept. Term 1999 (Apr. 9, 2002) ...................................11

*Gennell v. Denny's Corp.*,
    378 F. Supp. 2d 551 (D. Md. 2005)..............................................................47

*Giglio v. United States*,
    505 U.S. 150 (1972)..........................................................................39, 40

*Gilbert v. United States Bureau of Alcohol, Tobacco,*
*Firearms & Explosives*,
    805 Fed. Appx. 198 (4th Cir. 2020)..............................................................22

*Gilliam v. Sealey*,
    932 F.3d 216 (4th Cir. 2019)...............................................................*passim*

*Glenn v. City of Hammond*,
    2021 WL 4078063 (N.D. Ind. Sept. 7, 2021) ........................................33, 34

*Grandison v. State*,
    425 Md. 34 (2012) ...........................................................................26, 27

*Hall v. Barrett*,
    412 N.W.2d 648 (Iowa Ct. App. 1987).........................................................36

*Hawes v. State*,
    216 Md. App. 105 (2014) .........................................................23, 25, 28, 32

*Heck v. Humphrey*,
    512 U.S. 477 (1994)...............................................................................29

*Hinkle v. City of Clarksburg*,
    81 F.3d 416 (4th Cir. 1996) ......................................................................48

*Humbert v. Mayor & City Council of Balt.*,
    866 F.3d 546 (4th Cir. 2017) ................................................................45, 46

*Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*,
    790 F.3d 532 (4th Cir. 2015).....................................................................43

*Hunt v. State of Md.*,
    474 Md. 89 (2021) ............................................................................27, 32

*Hupp v. Cook*,
    931 F.3d 307 (4th Cir. 2019) .......................................................45

*Jackson v. City of Cleveland*,
    925 F.3d 793 (6th Cir. 2019) .......................................................39

*Jackson v. Coalter*,
    337 F.3d 74 (1st Cir. 2003) .........................................................31

*Jean v. Collins*,
    221 F.3d 656 (4th Cir. 2000) .......................................................44

*John S. Clark Co. v. Faggert & Frieden, P.C.*,
    65 F.3d 26 (4th Cir. 1995) ...........................................................24

*Johnson v. City of Fayetteville*,
    91 F. Supp. 3d 775 (E.D.N.C. 2015) ...........................................38

*Kyles v. Whitley*,
    514 U.S. 419 (1995).............................................................44, 45

*Martin v. Conner*,
    882 F. Supp. 2d 820 (D. Md. 2012) .............................................37

*Massey v. Ojaniit*,
    759 F.3d 343 (4th Cir. 2014).........................................19, 37, 38

*McGhie v. State*,
    449 Md. 494 (2016) .....................................................................24

*Md. State Bar Ass'n v. Kerr*,
    272 Md. 687 (1974) ...............................................................26, 27

*Mills v. City of Covina*,
    921 F.3d 1161 (9th Cir. 2019).....................................................31

*Minnieland Private Day Sch., Inc. v. Applied Underwriters
Captive Risk Assurance Co., Inc.*,
    867 F.3d 449 (4th Cir. 2017) .......................................................24

*Monell v. Dep't of Soc. Servs. of City of New York*,
436 U.S. 658 (1978) ...................................................................................12

*Montana v. United States*,
440 U.S. 147 (1979) ...................................................................................20

*Mosley v. State of Md.*,
378 Md. 548 (2003) ...............................................................................27, 32

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ...................................................................................24

*Owens v. Balt. City State's Attys. Office*,
2016 WL 5452944 (D. Md. Sept. 29, 2016) ................................................20

*Patterson v. Miller*,
451 F. Spp. 3d 1125 (D. Ariz. 2020), *aff'd*,
No. 20-15860, 2021 WL 3743863 (9 Cir. Aug. 24, 2021) ...................... 38-39

*Pegram v. Herdich*,
530 U.S. 211 (2000) ...................................................................................24

*Pennsylvania v. Finley*,
481 U.S. 551 (1987) ...................................................................................27

*Peterson v. Heymes*,
931 F.3d 646 (6th Cir. 2019) .................................................................29, 30

*Randall v. Prince George's Cnty.*,
302 F.3d 188 (4th Cir. 2002) ................................................................. 47-48

*Roe v. Patuxent Inst.*,
240 Md. 717, 214 A.2d 162 (1965) ............................................................28

*Shelton v. Warden, Md. Penitentiary*,
4 Md. App. 368 (1968) ...............................................................................21

*Siggers v. Alex*,
2021 WL 4391170 (E.D. Mich. Sep. 24, 2021),
*aff'd in part, rev'd in part and remanded*,
2023 WL 59866083 (6th Cir. Sep. 12, 2023) .........................................33, 34

*Smallwood v. State*,
    451 Md. 290 (2017) ...............................................................................23, 32

*Stanton v. Elliott*,
    25 F.4th 227 (4th Cir. 2022) ......................................................................18

*Thornton v. Md. Penitentiary*,
    241 Md. 715 (1966) ....................................................................................28

*Tillman v. Orange County*,
    519 F. App'x 632 (11th Cir. 2013).............................................................31

*Torchinsky v. Siwinski*,
    942 F.2d 257 (4th Cir. 1991) .....................................................................38

*United States v. Bartko*,
    728 F.3d 327 (4th Cir. 2013) .....................................................................44

*United States v. Bosyk*,
    933 F.3d 319 (4th Cir. 2019) .....................................................................46

*United States v. Caro*,
    597 F.3d 608 (4th Cir. 2010) .....................................................................45

*United States v. Madanlo*,
    954 F. Supp. 2d 384 (D. Md. 2013).............................................................21

*United States v. Ortiz*,
    669 F.3d 439 (4th Cir. 2011) .....................................................................46

*Waller v. Dir. Patuxent Inst.*,
    244 Md. 229 (1966) ...................................................................................27

*Welsh v. Gerber Products, Inc.*,
    315 Md. 510 (Md. 1989) ............................................................................20

**Statutes:**

28 U.S.C. § 1291 .................................................................................1

28 U.S.C. § 1331 .................................................................................1

28 U.S.C. § 1367 .................................................................................1

28 U.S.C. § 1738 ...............................................................................19

42 U.S.C. § 1983 .............................................................12, 29, 45, 48

Md. Code Crim. Proc. § 7-101 ............................................................9

Md. Code Crim. Proc. § 8-301 ...........................................11, 23, 32

Md. Code Crim. Proc. § 8-301(a) .....................................................24

Md. Crim. Law Code § 4-331 ...........................................................23

Md. Crim. Law Code § 4-407(d) ..................................................26, 30

**Constitutional Provisions:**

U.S. Const. amend. IV .................................................................45, 46

U.S. Const. amend. V ........................................................................10

U.S. Const. amend. VI .......................................................................10

U.S. Const. amend. XIV .....................................................................10

**Rules:**

Fed. R. Civ. P. 56(a)..........................................................................18

Fed. R. Civ. P. 56(c)(1)(B) ...............................................................18

Md. Decl. Rts., art., 19 ......................................................................12

Md. Decl. Rts., art., 24 ......................................................................12

Md. Decl. Rts., art., 26 ......................................................................12

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over Appellant Gary Washington's claims of federal constitutional violations pursuant to 28 U.S.C. § 1331 and exercised supplemental jurisdiction on his state law claims pursuant to 28 U.S.C. § 1367. On May 16, 2023, the district court entered final judgment disposing all parties' claims, such that this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. Appellant Washington noticed an appeal on May 23, 2023. JA3842.

## STATEMENT OF THE ISSUES

1.      Whether the district court properly held that collateral estoppel bars Washington from arguing that Officer Defendants violated his constitutional rights by coercing Robinson and fabricating his statement, when a Maryland state court previously expressly found that Robinson's recantation was incredible and that there was insufficient evidence of police coercion in a post-conviction proceeding that Maryland law treats as distinct and separate from criminal proceedings?

2.      Whether the district court properly granted summary judgment on Washington's malicious prosecution and unlawful detention claims where the alleged fabrication of Dorsey's statement did not deprive Washington of liberty because Dorsey was not called as a witness and the jury never heard her statement?

3.      Whether the district court properly held that Washington did not adduce evidence that the Officer Defendants failed to disclose *Brady* material in bad faith?

4.      Whether the district court properly dismissed Washington's state law claims because Washington did not adduce any evidence that Officer Defendants violated his constitutional rights or acted in an intentional or reckless manner?

## STATEMENT OF THE CASE

A jury convicted appellant, Gary Washington, of the murder of 17-year-old Faheem ("Bobo") Ali, based on the eyewitness testimony of 12-year-old Otis Robinson. Robinson was steadfast in his identification of Washington prior to and throughout the criminal trial. He maintained that he saw Washington shoot Ali in two separate statements to police, his grand jury testimony, his pre-trial motions hearing testimony, and his trial testimony. His identification of Washington remained consistent despite repeated cross-examinations, Washington's investigator's attempts to contact him to discuss his identification and testimony before the trial, meetings with the prosecutors, and Washington's brother, Ricky, threatening him to keep his mouth shut.

### *The investigation of Faheem Ali's murder leads to Gary Washington*

On December 27, 1986, at approximately 7:45 p.m., Ali was murdered in front of 2313 Barclay Street in Baltimore, Maryland. JA93. Baltimore Police Department ("BPD") homicide detectives, appellees, Oscar Requer and Thomas Pelligrini ("Officer Defendants" or "detectives") responded to the scene to investigate. JA94.

On the night of the murder, Ali's father told detectives that there was a relationship between his son and Ricky Washington. JA3516. The Washington home was located at 2328 Barclay Street. JA2743. Detectives also learned that Ricky had a brother named Gary. *See, e.g*., JA3510 (office report stating that "[d]uring the interviews at the scene we were told the victim was talking to Ricky Washington in front of 2328 Barclay Street prior to the shooting. Ricky Washington has a brother named Gary."). Detectives received information connecting the murder to the Washington home. *See, e.g*., JA3513-3516 (on December 28, 1986, a witness told detectives that he "saw somebody at Ricky Washington's house at the front door, point to the victim as the Bronco was coming up the street just before the shot…whoever it was at the door pointed out victim to people or person i[]n [sic] Bronco.").

On the night of murder, Pelligrini interviewed Rozetta Dorsey and Herb Manigault. Dorsey was a juvenile witness. JA96, JA3580. Dorsey said that she knew Washington and his brother Ricky, and that she saw Ali talking to Ricky before he was shot. JA96. She specifically said that Ricky was *not* the shooter. *Id*. She said she was "not sure" if Washington was the shooter. *Id*. Detectives memorialized this in their report and noted "it appears she know [sic] the identity of the suspect but is afraid [sic]." *Id*. Manigault testified that Otis Robinson witnessed the murder. Robinson was at his house, went outside prior to the gunshot, and came back

3

"running in scared and shaking," stating, "some man got shot… in front of our door."
JA3584. Robinson was 12 years old at the time of the shooting and lived directly
across the street from Washington. JA164, JA126.

Two days after the murder, on December 29, 1986, detectives interviewed
Robinson at BPD with his mother, Pamela Chavious. JA190-191. Robinson told
detectives:

> [I] was walking up the street toward 24th Street, I heard Gary
> Washington and Bobo arguing and Gary asked about some money, and
> "Bo Bo" [Ali] said I'll get it when I'm ready to get it. Then Gary hit Bo
> Bo in his jaw then he drawed [sic] his gun and shot "Bo Bo" then "Bo
> Bo" ran across the street trippen [sic] on the curb and fell on the
> sidewalk.

JA192. Robinson and his mother signed his statement.[1] JA195.

In an office report dated December 30, 1986, Requer and Pelligrini stated that
police radio had received an anonymous call about the murder, in which a female
stated that "Gary Ward" was the shooter. JA845. Documentation about the call
reflects that the "caller could have possibly said Washington instead of Ward." *Id*.
*See also* JA3549-3551 (Pellegrini's deposition testimony explaining that the caller
could have said Washington instead of Ward).

On January 2, 1987, detectives conducted Robinson's follow-up interview,
again with his mother present. JA196. Robinson stated that "Gary hit him (Bo Bo)

---

[1] Washington claims that detectives coerced Robinson and fabricated this statement,
and the follow-up statement on January 2, 1987.

in his jaw, Bo Bo grabbed his jaw and Gary pulled his gun out real fast and pulled the triger [sic]." JA196. He stated that he knew Washington for two to three years. JA197. Pelligrini then showed Robinson a photo array containing Washington's photograph. JA199. Robinson identified Washington as the shooter. *Id*. Robinson and his mother signed Robinson's statement. JA199-200.

On January 3, 1987, detectives conducted Dorsey's follow-up interview at BPD, in the presence of her mother. JA97. During the interview, Dorsey told detectives that Gary Washington shot Ali. JA98. She explained that she did not tell Pelligrini during her first interview (on the evening of the murder) because she was afraid. *Id*. Pelligrini then showed Dorsey a photo array with six photographs. JA100. Dorsey identified Washington in as the shooter. *Id*. Dorsey and her mother signed her statement. JA101. Dorsey retracted her statement prior to the criminal trial. JA3193 (ASA Finch stating to the court, "[c]onsidering what Mr. Polansky has told me, that Rozetta Dorsey now has recanted her statement, I doubt that I would even use her."). She was not called as a witness.

As such, Washington was the only suspect identified by witnesses as the shooter and connected with the location of the murder.

***Grand jury proceedings and trial***

On January 7, 1987, Robinson testified before a grand jury. JA202. He

testified that Washington shot Ali, consistent with his December 29th and January

2nd statements to detectives. JA202. He stated:

> I saw Gary Washington and a boy named Bobo arguing about some
> money and Gary told him he better have his money and Bobo say he
> will wait. And Gary quickly hit him in the jaw and drawed [sic] a gun
> and shot 'em. Then Bobo ran across the street and tripped on a curb at
> 2311 and Gary Washington tossed the gun he shot Bobo with up on the
> roof.

JA204. The grand jury indicted Washington and he was arraigned on March 3,

1987. JA206.

On April 15, 1987, at his request and with his attorney present, Washington

sat for a polygraph examination conducted by Richard Sheldon of the Maryland

State Police. JA207. Washington denied involvement and claimed that an individual

named Lawrence Thomas shot Ali. JA208. Contrary to this statement, Washington

had previously stated that he did not see anything or anyone when he looked outside.

JA3512. The polygraph results "indicated deception." JA207.  Sheldon stated in his

deposition that he "must have" told homicide detectives that "the results of the test

are that the defendant is not being truthful regarding his knowledge and involvement

in this case." JA3588.

Even so, detectives followed up on Washington's identification of Lawrence

Thomas. In fact, Thomas was offered immunity from prosecution at the direction of

Assistant State's Attorney Ruth Finch ("ASA Finch") in exchange for a truthful statement regarding the Ali murder. JA214. Thomas denied involvement and stated that he had no firsthand knowledge. JA214. Detectives also asked Robinson about Thomas. JA1663. Robinson stated that he did not know him *Id.*

On May 3, 1987, Requer and Pelligrini wrote an office report to inform their command that on April 27, 1987, ASA Finch interviewed Robinson with his mother present. JA210. During the interview, Robinson advised that Washington's brother, Ricky, approached Robinson and told him that he "better say the right thing" and gives him "hard looks" on the street. JA210. The Office of the State's Attorney agreed to relocate Robinson because of the threats. JA210. In her deposition, Pamela Chavious (Robinson's mother), testified that Ricky Washington came to her door looking for Robinson because "[Robinson] was the witness and he said, 'He better keep his mouth shut.'" JA2261. And later, during Washington's trial, someone threw a brick into their house. JA2279-2280.

On June 4, 1987, the court held a pre-trial motions hearing in Washington's criminal case. JA112. Washington filed a motion for preclusion of pretrial statements and unlawful search and seizure. JA113. Robinson testified, consistent with his witness statements and grand jury testimony, that Washington was the shooter. JA135.Washington's defense attorney, Paul Polansky ("attorney Polansky") argued

that the photo identification was suggestive, but the court denied his motion. JA113, JA161.

Trial commenced on June 8, 1987. JA162. Robinson's testimony was consistent with his witness statements, grand jury testimony, and motions hearing testimony. He testified that he knew Washington and his family, including his brothers and sisters, and that he saw Washington regularly. JA165-169. He testified that "Gary Washington smacked Bo Bo and his partner ran up Camp Street. Gary quickly shot Bo Bo." JA105. Robinson testified that the police took his statement several days later at the Homicide Division of BPD. JA185.

Robinson never indicated that he was coerced by police or that his statements were fabricated, despite the full opportunity for cross-examination at the motions hearing and trial, meetings with the ASA prior to the grand jury proceedings and the trial, Ricky Washington's threats, and attempts of Washington's private investigator to contact Robinson prior to trial regarding his identification. *See* JA3621 ("THE COURT: You motion is to preclude either [Robinson or his mother] from testifying because they wouldn't speak to your investigator? MR POLANSKY: No. The have the right not to speak to the investigator, but the State does not have the right to tell them --").

On June 16, 1987, on the basis of Robinson's testimony, the jury found Washington guilty of first-degree murder and use of a handgun in the commission

of a felony or crime of violence. JA251. The Appellate Court of Maryland[2] subsequently upheld the conviction. JA366.

### *Washington procures Robinson's recantation*

Nearly a decade after his conviction, on August 2, 1996, Washington hired a private investigator, who tracked down Robinson. The investigator interviewed Robinson about his witness statements in the dining room of the Washington family home while "there may have been [Washington's] family members which wandered in and out[.]" JA223, JA427. The interview resulted in Robinson retracting his statement. JA223-227. He stated that he did not see Washington shoot Ali after all, and that he lied because the police "threatened to take me away from my mother forever[.]" JA225-226. Robinson never told his mother that the police coerced him or that he had falsely identified Washington. JA2297.

### *Post-conviction proceedings*

On February 24, 1997, Washington filed petition for post-conviction relief pursuant to Maryland's Uniform Postconviction Procedure Act ("UPPA"), codified at Md. Code, Crim. Proc., § 7-101 et seq., in the Circuit Court for Baltimore City.

___

[2] On December 14, 2022, "the former Court of Appeals of Maryland [was] renamed the Supreme Court of Maryland and the Court of Special Appeals [was] renamed the Appellate Court of Maryland." *Forrest v. Balt. Police Dep't*, No. 1:22-CV-03220-JMC, 2023 WL 3847429, at *4 (D. Md. June 6, 2023) (quotation omitted). "This is a change in name only and does not affect the precedential value of the opinions of the two courts issued before the effective date of the name change." *Id.* (citation omitted).

JA273. Washington alleged that detectives violated his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments because they coerced Robinson "to testify falsely that [Washington] had committed the crime." JA273-274. Judge Allen L. Schwait conducted a full evidentiary hearing, which included testimony from Robinson regarding the police interviews and his subsequent recantation. JA1619-1674 (hearing transcript). Judge Schwait denied the petition in a memorandum opinion dated December 10, 1999. JA282. In relevant part, Judge Schwait held:

> [Washington's] **allegation that his constitutional rights were violated because the Baltimore City Police coerced Mr. Robinson** to testify that Petitioner had committed the crime **must fail**. First, **the evidence presented to this Court is insufficient to support a finding that the Police did, in fact, coerce Mr. Robinson**. Before and throughout Petitioner's trial, Mr. Robinson maintained that his statement that Petitioner was the one who committed the murder was true; Mr. Robinson gave that statement, which he and his mother signed, to the Police and repeated that statement as sworn testimony before the Grand Jury, during pretrial motions, and at Petitioner's trial. His identification of Petitioner as the one who committed the murder remained unchanged throughout the entire trial process. Only today, over thirteen years later, does Mr. Robinson change his story. **This Court finds Mr. Robinson's testimony incredible**. Therefore, **Petitioner's allegation on this basis must fail**."

JA275-276 (emphasis added). The Appellate Court of Maryland affirmed Judge Schwait's opinion, stating,

> [t]here was ample evidence that impeached Otis Robinson's recantation. He had many opportunities to recant. Yet he did not do so (1) when he was testifying before the Grand Jury, when no police officers were present, or (2) during the trial. He stated that he never informed his mother that police had coerced him or that he lied. Although he claimed that he had told his father about his false

statement, he never sought to recant his testimony until he was contacted by appellant [Washington's] private investigator.

*Gary B. Washington v. State of Maryland*, No. 3078, Sept. Term 1999 (Apr. 9, 2002)

(Murphy, C.J., writing for Hollander and Eyler, James R.), JA302.

### *Petition for writ of actual innocence*

Fifteen years later, on November 28, 2016, Washington filed a petition for writ of actual innocence in the Circuit Court for Baltimore City pursuant to Md. Code, Crim. Proc., § 8-301, based on newly discovered evidence in the form of "[s]tatements and testimony of Otis Robinson recanting his trial testimony." JA311. The State opposed. JA367. Judge Charles J. Peters granted the petition, holding that Washington "has met his burden to show that Robinson's recantations are newly discovered" because Robinson did not recant until he was interviewed by Washington's investigator in the "'mid-90's,' years after the filing deadline [for a motion for a new trial under Md. Rule 4-331]." JA313. Judge Peters further opined that because "[i]t seems irrefutable that the outcome of [Washington's] trial hinged completely on the credibility of 12 year old Otis Robinson," a recantation of Robinson's testimony would "have to create a substantial possibility of a different result." JA315. Judge Peters did not address police coercion, the credibility of the recantation, or Washington's constitutional rights. On January 15, 2019, the State dismissed the charges against Washington.

### *Civil suit*

On August 27, 2019, Washington filed the instant lawsuit in the United States District Court for the District of Maryland. JA1. On September 5, 2019, Washington amended his complaint, which includes the following counts: (1) Due Process violation under 42 U.S.C. § 1983; (2) Malicious prosecution under 42 U.S.C. § 1983; (3) Detention without Probable Cause under 42 U.S.C. § 1983; (4) Failure to Intervene under 42 U.S.C. § 1983; (5) *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) claim under 42 U.S.C. § 1983; (6) Malicious Prosecution; (7) Intentional Infliction of Emotional Distress; (8) violation of Articles 19, 24, and 26 of the Maryland Declaration of Rights; and (9) Indemnification. JA19.

### *Washington secures Dorsey as a witness for his civil suit*

Washington's investigator came to Dorsey's house four or five times, "trying to get me to be a witness" for Washington. JA2503-2504. The investigator eventually brought her an affidavit to sign. JA2498. Washington's lawyers secured an attorney to represent Dorsey during her deposition. JA2445-2446. In her deposition, Dorsey testified that she remembers going to the homicide unit with her mother, who was using drugs at the time. JA2463-2464. Once they arrived at the station, Dorsey's mother left the room for about 20 minutes but returned before the officers asked any questions. JA2467-2468. Dorsey does not otherwise remember the particulars of the conversation with the officers. JA2467-2470. Dorsey does not remember being

afraid of the officers. JA2470. She further testified that the police never told her what to say. JA2638. She did not remember the police mentioning Gary Washington before she picked him out from the photo array. JA2638-2639. She only heard his name after she picked him from the photos. JA2639. Dorsey testified that she did not understand some of the words in the statement, but signed it because her mother was present.[3] JA2579-2580.

### *Lack of documents and memories*

Almost 40 years have passed since the murder investigation and criminal trial. Discovery has revealed that documentary and testimonial evidence has deteriorated to the point of futility. Attorney Polansky (Washington's criminal defense attorney in 1987) advised:

> Unfortunately, I have **absolutely no documents or information** that still exists relative to the above captioned case. This case happened twenty-five (25) to thirty (30) years ago and those files were destroyed some years ago. Furthermore, I have very little recollection of the specifics of this case and **do not believe that I could provide you with any relevant information.**

JA215 (emphasis added). Likewise, ASA Finch, the prosecutor in Washington's criminal trial, testified at deposition "that the only independent recollection that I have is that I remember the name Gary Washington and I remember the names of some of the detectives." JA3635. Her recollection could not be refreshed by

---

[3]  Dorsey's affidavit states that the detectives gave her mother money. In her deposition, Dorsey said this statement was not true. JA2682.

reference to documents produced in discovery. JA3637-3641. Likewise, ASA Andrea Mason, who handled the petition for writ of actual innocence in 2016, was unable to locate the prosecutor's file. JA220; *see also* JA236-237. She testified at deposition that she did not remember whether she ever had the full set of discovery that had been exchanged. JA238-239.

Pellegrini testified at deposition that the homicide file he reviewed (after the filing of the civil case) "wasn't a complete case file," JA398, but was "just bits and pieces." JA396-397. For example, he noted that photo identifications were missing. JA398. The certified circuit court file contains a copy of only two photo arrays. JA3612-3616. At Washington's trial, Pellegrini testified that a photo array was shown to witness Sylvia Harper. JA3620. None of these arrays are found in what remains of the homicide file. Pelligrini had a limited memory of the case. He does not even remember whether he was the lead detective. JA857. He does not recall speaking with Dorsey. JA986-991. He does not recall speaking with Robinson or interviewing him at the station. JA1093, JA1096.

In response to an interrogatory, Pelligrini stated "that he does not have any present recollection that any specific police document relating to the Faheem Ali homicide investigation was lost, discarded, or destroyed." JA3607. However, he infers, after reading the "bits and pieces" of homicide file, that certain documents must be missing:

Mr. Pellegrini states that his present review of the document Bates numbered GWBPD 001222 indicates that it states, "The personal polaroid photographs were retained by Homicide Detective Pellegrini and placed in the case folder in the homicide office."

However, based on Mr. Pellegrini's present review of the documents produced by BPD under Bates numbers GW Legal Images Scan Homicide File 000001 through 000115 ("Homicide File"), it does not appear that the polaroid photographs referred to in GWBPD 001222 are contained in the present day Homicide File.

Responding further, Mr. Pellegrini states that his present review of the document Bates numbered GW Legal Images Scan Homicide File 000039 indicates that Rozetta Dorsey's January 3, 1987 statement states, "…Q: Rozetta on December 27, 1986 Detective Pellegrini interviewed and obtained a statement from you regarding the death of Bo Bo, also known as Faheem Ali, do you re-call that interview? A: Yes."

However, based on Mr. Pellegrini's present review of the present-day Homicide File, Mr. Pellegrini was unable to locate a statement from Rozetta Dorsey dated December 27, 1986.

JA3607-3608.

Requer likewise has no memory of the investigation.[4] JA1374, JA1468. Notwithstanding, he testified that prosecutors would review the entire homicide folder and decide what reports they wanted. JA1327-1330. He further testified that he turned over "whatever I had for the homicide case . . . of course we turned it

---

[4] The record also contains deposition excerpts from Detectives Tewey and Ceruti, who had less direct involvement in this investigation and who likewise have almost no recollection of this case. *See* JA317; JA379; ECF 161-37. Detective Fahlteich passed away in 2023 and there was no deposition testimony from him in the record presented to the district court. JA3816 n.9.

over." JA1354; *see also* JA1357 ("Like I said I would turn over all evidence to the prosecutor.").

On September 15, 2022, Pellegrini, Fahlteich, Ceruti, and Tewey filed a motion for summary judgment. JA51-92. Washington did not oppose summary judgment for Ceruti and Tewey, but opposed as to the remaining Officer Defendants. JA428-484. The district court conducted a hearing, and on April 12, 2023, issued a memorandum opinion and order granting summary judgment in the Detectives' favor. JA3801-3837. This appeal followed.

## SUMMARY OF THE ARGUMENT

This lawsuit is Washington's attempt to resurrect a claim that was rejected by the Maryland state court system more than 20 years ago. In 1999, Washington argued in a post-conviction proceeding before Judge Schwait that Officer Defendants violated his constitutional rights by fabricating evidence and coercing Robinson to identify him. Judge Schwait held a hearing and rejected that claim. In 2016, Washington filed a petition for writ of actual innocence, arguing that Judge Schwait's ruling would not preclude granting his petition for actual innocence because the legal standard is different. Judge Peters agreed, and Washington's conviction was vacated.

The district court correctly held that Washington is estopped from arguing that Officer Defendants coerced Robinson and fabricated his statements. Judge Schwait's order is a final judgment, which was affirmed on appeal. Judge Peters cannot

overrule an appellate court, and, in any event, his order is consistent with Judge Schwait's order. Washington's now-vacated conviction does not affect the validity of Judge Schwait's post-conviction order either. In Maryland, post-convictions are civil proceedings, which are treated as entirely separate from both the criminal proceedings and petitions for writ of actual innocence. And, Judge Schwait's order decided an issue that was not litigated in the criminal proceedings (police coercion and fabrication) and therefore cannot be affected by the vacated conviction.

Washington's claims based on Dorsey's recantation fail as well. She was never called as a witness because she retracted her statement to Washington's investigator prior to trial. Her statement then, even if fabricated, did not cause a deprivation of liberty.

With respect to the malicious prosecution claim, Officer Defendants had ample probable cause to arrest and prosecute Washington even without Dorsey's statement. Robinson had given two statements, Washington lived near the scene of the murder, and other witnesses connected Washington with the murder. As to the *Brady* claim, Washington has not adduced any evidence that Officer Defendants did not disclose *Brady* material. Because there is no evidence of egregious conduct, or a constitutional violation, Washington's failure to intervene and intentional infliction of emotional distress claims fail as well.

# ARGUMENT

## I. Standard of Review

Appellate review of summary judgment decisions is *de novo*. *Stanton v. Elliott*, 25 F.4th 227, 234 (4th Cir. 2022). Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). In order to rebut the lack of evidence in the record, a plaintiff "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). It is "the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Ford Motor Co. v. McDavid*, 259 F.2d 261, 266 (4th Cir. 1958). Where the nonmovant bears the burden of proof at trial, the moving party may show that it is entitled to summary judgment by citing to evidence in the record, or "by 'showing' that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also* Fed. R. Civ. P. 56(c)(1)(B).

## II. The Court properly granted summary judgment on the coercion/evidence fabrication claims (Count I).

### A. *Washington is estopped from arguing that Robinson's statement was fabricated or coerced.*

Washington alleges that Officer Defendants violated his due process rights by coercing Otis Robinson's eyewitness identification, thereby fabricating the evidence. *See generally* JA19 and Count I.  The Fourth Circuit "'[has] recognized a due process right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity.'" *Burgess v. Goldstein*, 997 F.3d 541, 553 (4th Cir. 2021) (quoting *Massey v. Ojaniit*, 759 F.3d 343, 354 (4th Cir. 2014)).

Washington is estopped from resurrecting this argument, which was rejected by the Maryland state courts over 25 years ago. A judge in a civil post-conviction proceeding, which Maryland law treats as a civil matter separate from the criminal proceedings, that Officer Defendants did *not* violate Washington's constitutional rights and that there was insufficient evidence of police coercion. JA275-276. Washington appealed that determination and a three-judge appellate panel affirmed the ruling against Washington's claim. JA302.  Pursuant to 28 U.S.C. § 1738, federal courts must give full faith and credit to state court judgments. The district court therefore properly held that Washington is collaterally estopped from arguing that

Robinson's statement was fabricated or coerced and all claims that rely on this theory therefore must fail.

"'Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.'" *Collins v. Pond Creek Mining Co*., 468 F.3d 213, 217 (4th Cir. 2006) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). Collateral estoppel may be used defensively by a non-party to the prior litigation. *Owens v. Balt. City State's Attys. Office*, 2016 WL 5452944, *5 (D. Md. Sept. 29, 2016). "Defensive use of nonmutual collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against a different party." *Id.* (citing *Welsh v. Gerber Products, Inc*., 315 Md. 510, 517 n.6 (Md. 1989)).

"Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Gilliam v. Sealey*, 932 F.3d 216, 231 (4th Cir. 2019) (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980)). The crucial inquiry then, is whether Maryland courts would give preclusive effect to Judge Schwait's order, affirmed by the Appellate Court of Maryland, which held that Robinson's recantation was incredible and there was insufficient evidence of police coercion. The answer is yes.

In Maryland, collateral estoppel has four elements:

(1)     the issue in the prior adjudication must be identical to the one in the present action; (2) the prior adjudication must have resulted in a final judgment on the merits; (3) the party against whom estoppel is being sought must have been a party to the prior adjudication or in privity with a party to the prior adjudication; and (4) the party against whom estoppel is being sought must have been given a fair opportunity to be heard on the allegedly preclusive issue.

*United States v. Madanlo*, 954 F. Supp. 2d 384 (D. Md. 2013) (citing *Cosby v. Dep't of Human Resources*, 425 Md. 629 (2012)). All of the elements are met. First, it is undisputed that Washington seeks to prove the same alleged fabrication and coercion, which Judge Schwait, after hearing all the evidence, denied based on insufficient evidence. Second, Judge Schwait's ruling constitutes a final judgment, which was affirmed by the Appellate Court of Maryland. Third, the party against whom estoppel is sought (Washington) was a party to the prior adjudication. Fourth, Washington was given a fair opportunity to be heard on the fabrication and police coercion issue.[5] Washington disputes the second element.[6] He argues that the

---

[5] Of course, "[i]t is the responsibility of the petitioner and his counsel to submit evidence in support of the contentions in the post-conviction petition." *Shelton v. Warden, Md. Pen*itentiary, 4 Md. App. 368 (1968).

And, as the district court pointed out, "[a]s a practical matter, the opportunity to litigate the question in 1999 was fuller and fairer than it could be in 2023, when files have been destroyed, important witnesses have died and memories have faded to a point where the facts will be near-impossible to ascertain." JA3826.

[6] Washington also argues that Judge Schwait did not "actually determine" police coercion and credibility. App. Br. at 39. This is belied by a plain reading of

judgment is not final because Judge Peters, a circuit court judge, effectively overturned the decision of the Appellate Court of Maryland (a higher court), and because Washington's criminal conviction was later vacated. This argument fails for the reasons outlined below.

### 1. *Judge Peters's order did not "overrule" Judge Schwait's order.*

Judge Schwait's order was affirmed by the Appellate Court of Maryland. There is no precedent in Maryland that allows a circuit court judge to overturn or overrule a decision of the Appellate Court of Maryland. Rather, Maryland law says the exact opposite. *See, e.g., Baltimore Cnty. v. Fraternal Ord. of Police, Baltimore Cnty. Lodge No. 4*, 449 Md. 713, 729 (2016) (Maryland's high court explaining that the doctrines of law of the case, "*res judicata*, collateral estoppel and *stare decisis*," all prevent trial courts from reversing decisions affirmed by an appellate court). Judge Peters was aware of Judge Schwait's opinion and the Appellate Court of Maryland's affirmance of it. JA3750, JA2766. There is no indication that Judge Peters believed he could overrule a decision of a Maryland appellate court. Judges

---

the memorandum opinion and order. JA275-276 The judge clearly determined that the tale of coercion was not credible factually, and that the testimony was legally insufficient to support a claim of a constitutional violation. *Id.* Judge Schwait's order was upheld by the Appellate Court of Maryland. JA283-302. This issue was not raised there, and it cannot be raised now. *See, e.g., Gilbert v. United States Bureau of Alcohol, Tobacco, Firearms & Explosives*, 805 Fed. Appx. 198, 203 (4th Cir. 2020) (noting that unpreserved issues may not be raised for the first time on appeal).

are presumed to know the law. *See e.g., Aventis Pasteur, Inc. v. Skevofilax*, 396 Md. 405, 426 (2007).

Second, even if an appellate court had not reviewed Judge Schwait's opinion, Judge Peters opinion is not inconsistent. Judge Schwait considered a post-conviction action based on the alleged violation of constitutional rights due to police coercion, whereas Judge Peters considered a petition for a writ of actual innocence based on witness recantation. These are different petitions, based on different standards. *See, e.g., Hawes v. State*, 216 Md. App. 105, 129 (2014) (citing *Douglas v. State*, 423 Md. 156, 177 (2011)) ("[a] claim of newly discovered evidence brought pursuant to a petition for writ of actual innocence is not a postconviction claim" and it is "clear[] [that] section 8-301 creates a procedure and affords remedies wholly separate and distinct from UPPA.")[7]  Recognizing this difference, Judge Peters did not analyze or even mention whether the recantation was credible, whether the original statements were the result of police coercion, or whether the police violated Washington's constitutional rights. Instead, Judge Peters applied the "looking back" approach

---

[7] Md. Code, Crim. Proc., § 8-301 was enacted into Maryland law in 2009. *See Smallwood v. State*, 451 Md. 290, 309 (2017) ("In 2009, the General Assembly enacted Crim. Proc. § 8–301 . . ."); *Id*. at 316 ("The postconviction statutory scheme clarifies the purpose behind enacting Crim. Proc. § 8–301—to address the statutory gap that existed for convicted persons who could not obtain postconviction relief because they obtained newly discovered evidence that was either non-biological, or discovered after the one year limitation in Maryland Rule 4–331.").

mandated by the Maryland Supreme Court and considered whether the newly discovered evidence (the recantation) "creates a substantial or significant possibility that the result may have been different." *McGhie v. State*, 449 Md. 494, 512 (2016) (citing Md. Code, Crim. Proc., § 8-301(a)) (alterations omitted). Using this standard, Judge Peters granted the petition. JA311-316. Unlike Judge Schwait, Judge Peters did not assess the credibility of the recantation or decide whether there was police coercion or a violation of constitutional rights. In fact, Washington's counsel urged him not to do so.[8] In his memorandum, he stated:

> At the outset, it is important to note that Judge Schwait's assessment and rejection of Robinson's post-conviction testimony in 1999 as "incredible" is **not controlling** on this Court, and was made in a **different legal context**. Unlike in the post-conviction proceeding, which required proof by at least a preponderance of the evidence that officers coerced Robinson to lie in court, all that is necessary here to grant relief is for this Court to find that Robinson's recantation is valid newly discovered evidence regardless of the reason he wrongly, or mistakenly, or incorrectly, or falsely identified Defendant Washington as the shooter at trial. While a mere recantation by Robinson was

---

[8] Judicial estoppel prevents Washington from arguing that Judge Peters's order overturned Judge Schwait's order because it is inconsistent with what he previously argued. "'Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation.'" *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 457 (4th Cir. 2017) (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28 (4th Cir. 1995) (additional citations omitted). The doctrine "'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdich*, 530 U.S. 211, 227, n.8 (2000)).

insufficient to permit post-conviction previously, it is now sufficient to grant a writ of actual innocence.

JA3766 (emphasis added). In his reply memorandum, Washington reiterated:

> **Unlike in the post-conviction proceeding, which required proof that the officers coerced Robinson to lie in court, all that is necessary here to grant relief is for this Court to find that Robinson's recantation is newly discovered evidence, regardless of the reason** he wrongly or mistakenly or incorrectly or falsely identified Defendant Washington as the shooter at trial. While a mere recantation by Robinson was insufficient to permit post conviction relief previously, it is sufficient now pursuant to writ of actual innocence.

JA3750 (emphasis added). Washington further argued that the "focus" of Judge Schwait's opinion "was not on the change in testimony but **whether overt coercion had been sufficiently proven**." JA3750 (emphasis added). And, "to summarize, this Court does not have to decide whether Det. Pellegrini coerced Robinson to testify; the issue now is whether Robinson has recanted[.]" JA3578. Judge Peters addressed the effect of a recantation on a jury; whereas Judge Schwait addressed the truthfulness of that recantation in the context of whether the officers had committed a constitutional violation. And, in Maryland, postconviction relief and petitions for writ of actual innocence in this context do not address the same thing: "[a] claim of newly discovered evidence brought pursuant to a petition for writ of actual innocence is not a postconviction claim." *Hawes v. State*, 216 Md. App. 105, 129 (2014). Given this difference, it is not logical that one could overrule the other.

In sum, Judge Peters's opinion did not overrule Judge Schwait's opinion for two reasons. First, legally, it could not have overruled it. Judge Peters could not overrule Judge Schwait's opinion because the opinion was affirmed by the Appellate Court of Maryland. Second, the opinions, which were decided under two different legal standards and decided two different things (whether there was coercion versus whether there was a recantation)  are not inconsistent with each other.

## 2. *Judge Schwait's order was not vacated by any Maryland court, or by operation of Maryland law.*

Washington next argues that his now-vacated conviction strips Judge Schwait's order of its finality under Maryland law. Washington has presented no evidence that the post-conviction order has been invalidated, rescinded, or otherwise lost its finality in the Maryland court system. The Maryland Rules pertaining to postconviction proceedings dictate the finality of the order. *See* Md. Rule 4-407(d) ("The statement [explaining the court's reasons for granting or denying relief] and order constitute a final judgment when entered by the clerk.").

Washington's argument that Judge Schwait's order is vacated by operation of law is inconsistent with the way Maryland treats postconviction proceedings. It is incontrovertible that Judge Schwait's ruling was not part of Washington's criminal case. Under Maryland law, criminal proceedings and collateral post-conviction proceedings are entirely separate. *Md. State Bar Ass'n v. Kerr*, 272 Md. 687 (1974). In *Grandison v. State*, the Supreme Court of Maryland stated:

Postconviction relief is even further removed from the criminal trial than is discretionary direct review. It is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature. It is a collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction. States have no obligation to provide this avenue of relief[.]

425 Md. 34, 55-56 (2012) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555–57 (1987)). "A postconviction proceeding is 'an independent and collateral civil inquiry into the validity of the conviction and sentence,' not a part of the original criminal cause." *Hunt v. State of Md.*, 474 Md. 89 at n. 14 (2021) (citing *Md. State Bar Ass'n v. Kerr*, 272 Md. 687, 689–90 (1974)); *Mosley v. State of Md.*, 378 Md. 548, 559–60 (2003) ("A post-conviction proceeding, often called a 'collateral proceeding,' brought under the Act is not an appeal of the judgment[.]") Logically then, a vacated conviction does not affect the finality of an unrelated post-conviction order in Maryland. *See e.g., Waller v. Dir. Patuxent Inst*., 244 Md. 229, 232 (1966) (stating that the filing of a collateral post-conviction proceeding "[does] not have the effect of suspending the finality of the conviction for assault."). As the district court noted, "[i]f a post-conviction proceeding does not suspend the underlying conviction's finality, logically the reversal of the conviction would not overturn the ruling in the post-conviction proceeding." JA3825.

Washington argues that the district court erred because it treated Judge Schwait's post-conviction order differently from Judge Peters's order on the petition for writ of actual innocence. App. Br. at 30 ("In finding Washington's claims

collaterally estopped, the district court fundamentally misunderstood the nature of Washington's post-conviction petition" and "[t]he UPPA is simply one pathway for attacking the validity of a conviction—no different from other forms of postconviction review, such as writs of actual innocence . . ."). This is incorrect. In Maryland, postconviction relief under the UPPA **is** treated differently from petitions for writs of actual innocence. In *Douglas v. State*, the Maryland Supreme Court stated:

> It is settled that questions of guilt or innocence cannot be raised in petitions for postconviction relief. *See, e.g., Thornton v. Md. Penitentiary*, 241 Md. 715, 717 (1966) (per curiam) (concluding that no grounds for postconviction relief exist where petitioner claims actual innocence). It is just as well settled that a petition for postconviction relief is not a substitute for a motion for a new trial." *Roe v. Patuxent Inst.*, 240 Md. 717, 719, 214 A.2d 162, 163 (1965) (per curiam).

423 Md. 156, 175-76 (2011). *See also Hawes*, 216 Md. App. at 129 ("[a] claim of newly discovered evidence brought pursuant to a petition for writ of actual innocence is not a postconviction claim."); *id*. (stating that petitions under the UPPA and petitions for writ of actual innocence contain "wholly separate" remedies). The *Douglas* Court noted that a petition for writ of actual innocence "is necessarily part of the usual procedures of trial and review available to a criminal defendant that were not intended to fall within the scope of postconviction relief." *Id*. at 177.

Washington cites a lot of irrelevant cases in ostensible support of his position that the vacated conviction strips Judge Schwait's post-conviction order of its

finality. He spends several pages arguing that "a vacated judgment has no preclusive effect for purposes of collateral estoppel." App. Br. at 26-29. This is a strawman argument. Officer Defendants do not contest this. Officer Defendants do not argue that a vacated judgment has preclusive effect. Officer Defendants argue that the post-conviction order was not vacated.

The irrelevant cases Washington cites involve direct appeals and interlocutory orders during the trials and pre-trial proceedings of now-vacated convictions.[9] For example, in *Gilliam v. Sealy*, Gilliam's conviction was vacated, and he thereafter filed a civil suit. 932 F.3d 216 (4th Cir. 2019). The officers argued that Gilliam was estopped from challenging the probable cause supporting the arrest and the voluntariness of the confession because, at trial, the judge found the confession to be voluntary. *Id*. at 232-233. By contrast, here, Judge Schwait's ruling was not part of the criminal trial, and his decision did not cause or contribute to the now-vacated criminal conviction. Likewise, in *Peterson v. Heymes*, cited by Washington, the Sixth Circuit held that the trial court's interlocutory hearings in the criminal trial were

---

[9] Washington also cites *Heck v. Humphrey*, 512 U.S. 477 (1994) for the proposition that it "specifically permits a plaintiff to proceed with a § 1983 action when a conviction has been reversed, expunged, or declared invalid . . ." and "[does] not differentiate between the procedural mechanisms by which a conviction is vacated." App. Br. at 33. But Officer Defendants do not argue that Washington cannot proceed with a § 1983 action. He just cannot proceed with a § 1983 action on grounds that were rejected by a separate, civil court and could not have been grounds for his now-vacated conviction.

vacated when the criminal conviction was vacated. 931 F.3d 646, 554-55 (6th Cir. 2019); App. Br. at 28. Judge Schwait's order on post-conviction relief was not an interlocutory order or a direct appeal of his conviction. It is a final judgment under Md. Rule 4-407(d).

Washington next cites *Bermudez v. City of New York*, 790 F.3d 368, 374 (2d Cir. 2015). App. Br. at 28. This case does not meaningfully discuss collateral estoppel at all. It mentions, in a footnote:

> Defendants assert on appeal that Bermudez is collaterally estopped from arguing that the witnesses were coerced, because this testimony was not found credible in the prior federal habeas proceeding. [] **Given the context and history of this case, in particular that the government conceded Bermudez's innocence** *after* **the federal habeas proceeding to which it seeks to have us give preclusive effect**, we conclude that applying issue preclusion would be **inequitable** and decline to do so.

*Id.* at n2 (italics in original). The case says nothing about whether the ruling from the habeas proceeding would have had a preclusive effect had the government *not* conceded innocence after the habeas proceeding concluded. *See id.* at 373 ("The Manhattan District Attorney's Office conceded not only that Lopez had testified falsely when he identified Bermudez as 'Wool Lou' at trial, but also that Luis Munoz was the real 'Wool Lou.'"). In the case *sub judice*, neither the State nor Officer Defendants have ever conceded that Washington is innocent, that Robinson's recantation is credible, or that Officer Defendants coerced Robinson or fabricated his statement.

Washington cites another batch of cases for the proposition that "once a conviction has been vacated, it has no preclusive effect and cannot bar constitutional challenges to a wrongful conviction." App. Br. at 27. These cases are irrelevant. *See Jackson v. Coalter*, 337 F.3d 74, 85 (1st Cir. 2003) (denying collateral estoppel where "petitioner . . . claim[s] that the conviction for receiving stolen property remained a valid judgment notwithstanding its vacation"); *Aguillard v. McGowam*, 207 F3d 226, 231 (5th Cir. 2000) ("We hold that a conviction reversed on appeal cannot function as a final judgment supporting the application of collateral estoppel."); *Dodrill v. Ludt*, 764 F.2d 442, 444 (6th Cir. 1985) (conviction reversed on direct appeal); *Mills v. City of Covina*, 921 F.3d 1161, 1169-70 (9th Cir. 2019) (collateral estoppel could not be used to prevent litigation of facts jury based its verdict on where conviction was overturned on appeal); *Tillman v. Orange County*, 519 F. App'x 632, 637 (11th Cir. 2013) (the issues determined at trial were not given preclusive effect after the conviction was vacated).

Officer Defendants do not argue that Washington is bound by any fact that was determined at his criminal trial or on direct appeal. Here, whether police coerced Robinson, or whether Washington's constitutional rights were violated was not litigated in his criminal trial. Therefore, unlike the above cases, Judge Schwait's ruling is wholly separate from the trial court proceedings. Washington's argument fails because it is premised on the fiction that Judge Schwait's order should be treated

the same as an interlocutory order or an order arising out of the direct review of the now-vacated criminal conviction. Maryland law treats them differently. In Maryland, post-conviction proceedings are considered entirely separate civil proceedings, which stand independently of his criminal proceedings and the vacated conviction. *Smallwood v. State*, 451 Md. 309, 316 (2017) ("[s]ection 8–301 was designed to enable wrongfully convicted defendants to exonerate themselves using newly discovered non-biological evidence.") (internal quotation marks omitted); *Hunt v. State of Md.*, 474 Md. 89 at n. 14 (2021) ("A postconviction proceeding is 'an independent and collateral civil inquiry into the validity of the conviction and sentence,' not a part of the original criminal cause."); *Hawes*, 216 Md. App. at 129 ("[a] claim of newly discovered evidence brought pursuant to a petition for writ of actual innocence is not a postconviction claim."); *Id*. (stating that petitions under the UPPA and petitions for writ of actual innocence contain "wholly separate" remedies); *Mosley v. State of Md.*, 378 Md. 548, 559–60 (2003) ("A post-conviction proceeding, often called a 'collateral proceeding,' brought under the Act is not an appeal of the judgment[.]").

### 3. *Vacating a Maryland criminal conviction does not invalidate all post-conviction civil proceedings.*

Washington cites out-of-state cases regarding the effect of a vacated judgment on collateral proceedings. They are not instructive because the cases cited involve collateral proceedings that directly review the trial court proceedings, which is

simply not what occurred here. In *Glenn v. City of Hammond*, 2021 WL 4078063 (N.D. Ind. Sept. 7, 2021), after Glenn's conviction was vacated, he and co-defendants claimed constitutional rights violations "by fabricating inculpatory evidence and withholding exculpatory evidence during the investigation and trial." *Id*. at *1. The municipal defendants in the civil case claimed collateral estoppel. *Id*. at *6. The *Glenn* Court rejected the collateral estoppel argument, noting that "the decisions in the collateral proceedings were necessarily based on the factual and legal decisions in the criminal cases being collaterally challenged." *Id*. at *9. *Glenn* cited with approval *Chandler v. Louisville Jefferson Cnty. Metro Gov't*, No. 3:10-CV-470, 2011 WL 781183, at *2 (W.D. Ky. Mar. 1, 2011), which described the judges as "having reviewed the state court findings and rulings which are now literally banished to judicial netherland." *Glenn*, 2021 WL 4078063 at *9 (citing *Chandler*, 2011 WL 781183, at *2).

Likewise, in *Siggers v. Alex*, the court rejected a collateral estoppel argument, quoting *Chandler* expressly. 2021 WL 4391170 at *5 (E.D. Mich. Sep. 24, 2021), *aff'd in part, rev'd in part and remanded*, 2023 WL 59866083 (6th Cir. Sep. 12, 2023) (stating that the postconviction court "reviewed the state court proceedings and rulings which are now vacated. They made no de novo findings or rulings, but rather, in an effort to make a determination regarding the reasonableness of the state court's decision, reviewed the state court findings and rulings which are now literally

banished to judicial netherland.") (quoting *Chandler*, 2011 WL 781193, at *2).  In contrast, Judge Schwait **did** make de novo factual findings regarding fabrication, credibility, and police coercion. These findings were entirely divorced from those underlying the now-vacated criminal proceedings pursuant to Maryland law.

Unlike *Glenn*, *Chandler*, and *Siggers*,[10] Judge Schwait did **not** "review the state court findings." His ruling was not "based" on the record of the proceedings that led to the now-vacated conviction.  Instead, he determined whether there was fabrication and police coercion in a separate, civil proceeding. Police coercion was not a factual or legal issue in the now-vacated criminal case. Unlike in *Glenn*, *Chandler*, and *Siggers*, Judge Schwait's order does not lose finality because he did not base his ruling on a review the criminal case.

There is no Maryland case law directly addressing the precise issue before this Court. However, it logically follows from the way Maryland treats post-conviction relief (as separate from the criminal trial, separate from a motion for a new trial, and separate from petitions for writ of actual innocence) that Judge Schwait's order

---

[10] Washington also cites *Donald v. Outlaw* in support of his position, where the court held that it would not give preclusive effect to an order regarding the officer defendants' failure to disclose part of their investigation because the conviction had been vacated. 2023 WL 2346270 (N.D. Ind. Mar. 3, 2023). There is not enough detail in his opinion regarding the nature of the post-conviction proceedings, the trial, or Indiana law on the treatment of post-conviction proceedings for the opinion to be of any assistance.

stands independently of Washington's now-vacated conviction. No Maryland law suggests that it would not give Judge Schwait's order preclusive effect.

As described above, there is scant of out-of-jurisdiction case law regarding the effect of a vacated conviction on collateral orders. The cases cited by Washington on the issue are not instructive for two reasons. First, they all examine postconviction rulings that are based on facts or law that intersect with the facts and law of the criminal trial. Here, Judge Schwait's order did not review anything the trial court did. Whether Washington could be found actually innocent based on newly discovered evidence is not connected to Judge Schwait's ruling regarding police coercion or violation of constitutional rights. Second, even if the cases Washington cites were factually similar, it is not proper to apply out-of-state rulings regarding post-conviction proceedings to Maryland law. Maryland law clearly envisions postconviction proceedings as separate and distinct from not only the criminal trial, but from writs of actual innocence as well.

### 4. *The equities militate in favor of applying collateral estoppel.*

Washington next argues that it is inequitable to apply collateral estoppel in this case. App. Br. at 41. The purpose of collateral estoppel is to "avoid the expense and vexation of multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions." *Bryan v. State Farm Mut. Auto Ins. Co.*, 205 Md. App. 587, 592 (quoting *Colandrea v. Wilde*

*Lake Cmty. Ass'n*, 361 Md. 371, 387 (2000)) (additional citation and internal quotation marks omitted).

It would not be inequitable to apply collateral estoppel. To the contrary, it is inequitable to force Officer Defendants to relitigate police coercion now, more than 20 years after Judge Schwait's order, when memories have faded, witnesses have died, and documents have been destroyed and lost. And, Washington would have had just as much incentive to argue police coercion and violation of constitutional rights to secure his release from jail as he would a claim for money damages. *See, e.g., Hall v. Barrett*, 412 N.W.2d 648, 51 (Iowa Ct. App. 1987) (stating that a litigant "has the same opportunity and incentive to litigate the attorney's conduct for purposes of seeking to overturn a conviction through an ineffective-assistance-of-counsel claim as for seeking monetary damages through a malpractice claim").

Although Washington argues that the affidavit his investigator procured from Dorsey in 2020 changes things, Dorsey presented no evidence that she was coerced by police or that they knowingly fabricated anything. She stated that she signed her statement because her mother told her to, that the police did *not* tell her what to say, and that she was *not afraid* of them. JA2470, JA2638.

Because Washington is collaterally estopped from arguing fabrication of Robinson's statement and police coercion, Count I as to Robinson fails.[11]

**B.** ***Count I fails to the extent it relies on the alleged fabrication of Dorsey's statement because Washington adduced no evidence that Dorsey's statement caused his loss of liberty.***

Collateral estoppel does not apply to claims that the Officer Defendants fabricated Dorsey's statements and identification. Washington's claim nevertheless fails because (even assuming fabrication) he has adduced no evidence that Dorsey's identification of Washington caused Washington's loss of liberty.

Fabrication of evidence alone is insufficient to state a claim for a due process violation. *Burgess*, 997 F.3d at 553. The fabrication *must* result in the deprivation of liberty. *Martin v. Conner*, 882 F. Supp. 2d 820, 847 (D. Md. 2012). "To prove a due process violation, [a plaintiff] must prove both but-for and proximate causation – in other words that the alleged wrongful act(s) caused [his] loss of liberty . . . ." *Gilliam*, 932 F.3d at 238. *See also Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (stating that constitutional torts require but-for causation); *Massey*, 759 F.3d at 354 (stating that in addition to proving fabrication of evidence, a plaintiff must prove that his conviction and incarceration resulted from the fabrication).

---

[11] Washington's *Brady* and malicious prosecution claims fail on estoppel grounds as well to the extent they are based on the alleged coercion and fabrication of Robinson's statements.

Officer Defendants had ample probable cause to arrest and prosecute Washington even without Dorsey's identification. They had Robinson's witness statements and identification. *See Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991) ("It is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of his attacker," and "it is difficult to imagine how a police officer could obtain better evidence of probable cause than an identification by name of assailants . . ."). In other words, Dorsey's statement did not cause Washington's loss of liberty because probable cause existed independent of her statements. *Massey*, 759 F.3d at 556 (alleged fabrication of photographic lineup did not cause conviction when other witnesses identified plaintiff near the crime scene); *Johnson v. City of Fayetteville*, 91 F. Supp. 3d 775, 807 (E.D.N.C. 2015) (no causation where alleged fabrication occurred after finding of probable cause). The Officer Defendants also received an anonymous tip that "Gary Ward" was the shooter (same first name and first initial of last name), the location of Washington's home relative to the murder location, and the other witnesses connecting Ricky Washington to Ali and Washington's home. *See* pages 2-5, *supra*.

Additionally, once charges were brought, Dorsey's statement played no role at all. She never testified as a witness. Her identification was not used at motions hearings or at the criminal trial. Her statement and identification did not cause Washington's loss of liberty. *See Patterson v. Miller*, 451 F. Spp. 3d 1125, 1148 (D.

Ariz. 2020), *aff'd* No. 20-15860, 2021 WL 3743863 (9 Cir. Aug. 24, 2021) (finding a lack of causation where there was no evidence that the court considered the allegedly fabricated evidence). Because the jury did not know about her statement, there is no conceivable way that Dorsey's statement could have "affected the decision of the jury."[12] App. Br at 48 (citing *Jackson v. City of Cleveland*, 925 F.3d 793, 816 (6th Cir. 2019)). Therefore, Washington's fabrication claim fails to the extent it is based on Dorsey.

## III. Washington's *Brady* claim fails because there is no evidence Officer Defendants withheld any evidence, and because the allegedly withheld evidence is not material.

Washington alleges that the Officer Defendants withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 150 (1972), but Washington has adduced no evidence to support the elements necessary to such a claim. Washington offers only loose speculation.

In *Brady*, the Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. In *Giglio v. United States*, the Court held that it is likewise

---

[12] *See* JA163. ASA Finch attempted to elicit testimony from Pelligrini regarding whether he obtained any information from Dorsey. Attorney Polansky objected, and the court sustained his objection. *Id.* The jury did not hear any testimony regarding Dorsey's statement or identification.

improper for the prosecution to withhold impeachment evidence. 505 U.S. 150, 154—55 (1972). Police officers commit *Brady* violations "only when they suppress exculpatory evidence in bad faith." *Gilliam v. Sealey*, 932 F.3d 216, 238 (4th Cir. 2019). Therefore, Washington must show 1) suppression of exculpatory or impeachment evidence; 2) that the suppressed evidence was material; and 3) the suppression was in bad faith. *See Burgess v. Goldstein*, 997 F.3d 541, 550 (4th Cir. 2021). He cannot.

### A. *Washington adduced no evidence that the Officer Defendants withheld* **Brady** *material.*

Washington alleges that Officer Defendants failed to disclose: (1) initial statements by Robinson and Dorsey in which they stated they could not identify the shooter, and (2) information that they fabricated statements implicating Washington. This is beyond strained; as Judge Gallagher noted, "[t]o bring their *Brady* claim, Plaintiff alleges fabrication, and then alleges suppression of that alleged fabrication." JA3830. Assuming that such material existed in the first place, Washington has adduced no evidence that the information was not turned over to the prosecutor. Attorney Polansky (Washington's trial attorney) does not remember anything and has no documents or records. JA215. ASA Finch and ASA Mason do not remember anything regarding what documents or evidence the State obtained or what discovery was produced to Attorney Polansky. JA20, JA236-237, JA365-341. Officer Defendants testified that, although they have no specific memory of the Washington

investigation, it was not their practice to withhold evidence and everything in the homicide file was turned over to the prosecutor. *E.g.*, JA1354, JA1357. The homicide file, present day, exists only in "bits and pieces." Washington cannot use the absence of memories and documents to support the claim that Officer Defendants withheld exculpatory material.

Washington struggles to connect the dots by speculating, piling inference upon inference, and calling it evidence. First, Washington argues that because Officer Defendants stated that although they have no specific memories of the case, they would not withhold exculpatory evidence or "deploy[] coercive tactics," as evidence that they in fact *did* suppress evidence and deploy coercive tactics. App. Br. at 51.[13] To put it mildly, this is confusing, and it is quintessential speculation. Second, Washington relies on the "bits and pieces" of the homicide file to support his allegation that exculpatory material was not turned over. Again, textbook speculation. Washington mischaracterizes Pelligrini's interrogatory answer to argue that only certain things were missing from the homicide file. But it is clear from the text of the interrogatory answer that it was not an exhaustive list. Pelligrini stated

---

[13] In support, Washington cites JA1005-1006, which is Pellegrini's deposition testimony. App. Br. at 51. The statements on the cited pages relate to general practices, such as whether Pelligrini would ever threaten a witness (to which he responded that he would not). JA1005-1006. The other citation, JA59-60, is Officer Defendants' memorandum in support of summary judgment and does not appear to address initial statements or alleged coercion. App. Br. at 51; JA59-60.

"that he does not have any present recollection that any specific police document relating to the Faheem Ali homicide investigation was lost, discarded, or destroyed." JA3607. He then infers, after reading the homicide file, that certain documents must be missing:

> Mr. Pellegrini states that his present review of the document Bates numbered GWBPD 001222 indicates that it states, "The personal polaroid photographs were retained by Homicide Detective Pellegrini and placed in the case folder in the homicide office."

> However, based on Mr. Pellegrini's present review of the documents produced by BPD under Bates numbers GW Legal Images Scan Homicide File 000001 through 000115 ("Homicide File"), it does not appear that the polaroid photographs referred to in GWBPD 001222 are contained in the present day Homicide File.

> Responding further, Mr. Pellegrini states that his present review of the document Bates numbered GW Legal Images Scan Homicide File 000039 indicates that Rozetta Dorsey's January 3, 1987 statement states, "…Q: Rozetta on December 27, 1986 Detective Pellegrini interviewed and obtained a statement from you regarding the death of Bo Bo, also known as Faheem Ali, do you re-call that interview? A: Yes."

> However, based on Mr. Pellegrini's present review of the present-day Homicide File, Mr. Pellegrini was unable to locate a statement from Rozetta Dorsey dated December 27, 1986.

JA3607-3608.

Third, Washington relies on a State's pre-trial discovery disclosure, which indicates that exculpatory evidence was not disclosed. App. Br. at 53 (citing JA42; JA244). This is neither here nor there. If ASA Finch had wanted to withhold exculpatory material, she obviously would not admit that she received it. Moreover,

the files are incomplete and there is no evidence that this is the only pre-trial disclosure. There could have been additional pre-trial discovery disclosures. The fact remains that neither ASA Finch, nor ASA Mason have any memory of what documents or information were obtained from Officer Defendants, or what discovery was produced to attorney Polansky. *See* JA215; JA220; JA236-237; JA365-441. Washington argues that the district court should have taken evidence of ASA Finch's practices (to always disclose exculpatory evidence) as evidence that she would have disclosed it in this case. That is speculation. And, even if it were to rise above the level of speculation due to it being "habit evidence" as Washington argues, App. Br. at 54, it is the quintessential "scintilla" of evidence that courts caution should not go to a jury. *See Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted) (stating that a plaintiff "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence").

Finally, Washington argues that a chain of stacked assumptions is evidence that Officer Defendants suppressed exculpatory material. First, he speculates that attorney Polansky's trial strategy was shaped solely by the prosecutor's discovery. Next, he speculates that because attorney Polansky did not ask certain questions at trial, it follows that he did not receive exculpatory material. Then, he speculates that

if attorney Polansky did not receive exculpatory material, it follows that it was the Officer Defendants (not the prosecution) who failed to disclose it.

Washington struggles to describe the evidence he thinks he has. The "evidence" rests on speculation stacked upon speculation. There is no evidence that Defendant Officers purposely withheld information. *See Jean v. Collins*, 221 F.3d 656, 663 (4th Cir. 2000) (Wilkinson, J. concurring) (stating that a *Brady* violation "requires that the officer have intentionally withheld the evidence for the purpose of depriving the plaintiff of the use of that evidence during his criminal trial. This is what is meant by 'bad faith.' And that must be established on the basis of evidence[.]"). "Genuine issues of material fact cannot be based on mere speculation or the building of one inference upon another." *Barwick v. Celeotex Corp.*, 736 F.2d 946, 963 (4th Cir. 1984).

Because there is no evidence the Officer Defendants withheld material evidence, the district court properly granted judgment in their favor.

**B.** ***Even if there were evidence the Officer Defendants withheld* Brady *material, the allegedly suppressed evidence is not material.***

Evidence is material when there is a reasonable probability that, had the evidence been disclosed, the result of the proceedings would have been different. *See Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995); *United States v. Bartko*, 728 F.3d 327, 340 (4th Cir. 2013). The reasonable probability standard "is not whether the defendant would more likely than not have received a different verdict with the

evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 34. *See also Gilliam*, 932 F.3d at 238 ("the reasonable probability standard is satisfied if the likelihood of a different result is great enough to undermine confidence in the outcome of the trial, or the suppression casts serious doubt on the proceedings' integrity.") (citation and internal quotation marks omitted). Mere speculation as to the materiality of evidence is not enough. *United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010). Robinson's testimony was consistent and unshakeable, and was the basis upon which Washington was convicted. Dorsey was at no time used as a witness, and the jury did not know about her statements or identification.

## IV. The district court properly granted summary judgment on Washington's malicious prosecution and unlawful detention claims.

A claim for malicious prosecution under 42 U.S.C. § 1983 "is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates several elements of the common law tort.'" *Hupp v. Cook*, 931 F.3d 307, 323-24 (4th Cir. 2019) (quoting *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012)). In order to survive summary judgment, Washington must adduce evidence sufficient to prove that Officer Defendants "(1) caused (2) a seizure pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in [his] favor." *Humbert*, 866 F.3d at 555 (citation and quotation marks omitted)

(brackets added). Under Maryland law, Washington must also show that Officer Defendants acted intentionally. *See Caldor, Inc. v. Bowden*, 330 Md. 632 (1993).

The core of a malicious prosecution claim is the absence of probable cause. Probable cause is "'not a high bar.'" *United States v. Bosyk*, 933 F.3d 319, 325 (4th Cir. 2019) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)). It requires only a "reasonable ground for belief" and "more than bare suspicion." *United States v. Ortiz*, 669 F.3d 439, 444 (4th Cir. 2011). A Fourth Amendment unlawful detention claim also hinges on lack of probable cause. *See, e.g., Humbert v. Mayor & City Council of Balt.*, 866 F.3d 546, 555 (4th Cir. 2017). Here, even excepting Dorsey's identification, Officer Defendants had probable cause for the reasons stated in Section II.B., *supra*.

To the extent that the malicious prosecution and unlawful detention claims are based on Robinson's statement, the claim is barred by collateral estoppel, as outlined in Section II.A., *supra*.

## V. The district court correctly granted summary judgment on Washington's intentional infliction of emotional distress claim.

To survive summary judgment on a Maryland intentional infliction of emotional distress ("IIED") claim, Washington must adduce evidence to establish that "(1) the conduct is intentional or reckless; (2) the conduct is extreme and outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress is severe." *Carson v. Giant Food,*

*Inc.*, 187 F. Supp. 2d 462, 481 (D. Md. 2002). To meet the extreme and outrageous standard, the plaintiff must show that the defendant's behavior was "so outrageous in character, and extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Gennell v. Denny's Corp.*, 378 F. Supp. 2d 551, 560 (D. Md. 2005) (internal citation omitted). Washington fails to meet his burden.

There is no evidence that Officer Defendants acted intentionally or recklessly, as explained in Section III.A. , *supra*, because here is no evidence that they withheld anything in the first place. Without proof that conduct occurred, the remaining elements fall away. And, Washington has not provided any evidence that he suffers from emotional distress. He testified that he plays chess about once a week at a barber shop. JA617. He goes to church and to dinner with his wife every week. JA618. He is in good health aside from high blood pressure. JA620. He has not been treated by a mental health professional (either in prison or after his release), and he does not believe he has a mental illness, although he does experience difficulty sleeping on some nights. JA621.

## VI. The district court properly dismissed Washington's failure to intervene claim.

In the Fourth Circuit, a failure-to-intervene claim lies where an officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall*

*v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002). In order to be held liable, the officer must have "specific knowledge" of the constitutional violation. *Id*. Washington has adduced no evidence to show that any Officer Defendant violated his constitutional rights. Without an underlying constitutional violation, a § 1983 failure to intervene claim necessarily fails. *See, e.g., Hinkle v. City of Clarksburg*, 81 F.3d 416, 420 (4th Cir. 1996) (noting that bystander liability claims are derivative).

## CONCLUSION

For the reasons set forth above, Appellees respectfully request that the Court affirm the district court's grant of summary judgment.

Respectfully submitted,

Ebony M. Thompson
  Baltimore City Solicitor

/s/ Kara K. Lynch
Kara K. Lynch
Jasmine England-Caesar
  Office of Legal Affairs

Michael P. Redmond
  Director of Appellate Practice

CITY OF BALTIMORE LAW DEPARTMENT
100 N. Holliday Street, Suite 101
Baltimore, Maryland 21202
Telephone: (410) 396-2496
Fax: (410) 396-2126
E-mail: kara.lynch@baltimorepolice.org

*Counsel for Appellees*

<u>**CERTIFICATE OF COMPLIANCE**</u>

1.  This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    This document contains <u>11,796</u> words.

2.  This document complies with the typeface requirements because:

    This document has been prepared in a proportional spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: February 5, 2024                    Respectfully submitted,

                                           /s/ Kara K. Lynch
                                           Kara K. Lynch
                                             Office of Legal Affairs

                                           CITY OF BALTIMORE LAW DEPARTMENT
                                           100 N. Holliday Street, Suite 101
                                           Baltimore, Maryland 21202
                                           Telephone: (410) 396-2496
                                           Fax: (410) 396-2126
                                           E-mail: kara.lynch@baltimorepolice.org

                                           *Counsel for Appellees*